IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE RAINEY, | : | CIVIL ACTION NO. **1:CV-07-1294** |
| Plaintiff | : | (Judge Kosik) |
| v. | : | (Magistrate Judge Blewitt) |
| CHRIS PUTMAN, et al., | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background.**

Plaintiff, Kyle Rainey, an inmate at the State Correctional Institution at Dallas ("SCI-Dallas") filed, *pro se*, the instant civil rights action pursuant to 42 U.S.C. § 1983, on July 17, 2007. (Doc. 1). Plaintiff attached Exhibits to his Complaint. Plaintiff has also filed a motion for leave to proceed *in forma pauperis*. (Doc. 2).

Plaintiff's claim was set forth on a form § 1983 complaint which this court routinely provides to *pro se* litigants. *See* Doc. 1. Plaintiff attached two additional typed pages regarding his Statement of Claims, Doc. 1, pp. 3(a) and 3(b).[1] Plaintiff indicated that he exhausted his Administrative remedies at SCI-Dallas with respect to his claim. (Doc. 1, p. 1).[2] As Exhibits to his Complaint,

---

[1] Plaintiff also mentioned an attached page 3(c) to his Complaint (Doc. 1, p. 3), but we did not find this page.

[2] In his Complaint, as stated above, Plaintiff indicated that he has fully exhausted the grievance procedure available at SCI-Dallas with respect to his claim. (Doc. 1, p. 1, ¶ 2.). In fact, Plaintiff attached a copy of his successful grievance misconduct appeal to his Complaint. (Doc. 1, Ex. 2). However, it was not clear if Plaintiff exhausted all of his present claims.

Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). In *Porter*

Plaintiff attached copies of his Disciplinary Hearing Report, signed by former Defendant Putman, dated April 4, 2007 (Ex. 1), Program Review Committee's Action Report dated April 26, 2007 regarding Plaintiff's misconduct appeal (Ex. 2), morning law library hour session sign-up slips (Ex. 3), the misconduct report filed by former Defendant Corrections Officer ("CO") Weaver on April 11, 2007 (Ex. 4), the disciplinary hearing report signed by former Defendant Hearing Examiner Jones dated April 17, 2007 (Ex. 5), and Plaintiff's misconduct hearing appeal dated April 17, 2007 (Ex. 6).[3]  (Doc. 1, pp. 6-11).

    We screened the Complaint pursuant to the Prison Litigation Reform Act of 1995,[4] (the "PLRA"), which obligated the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[5]  On August 15, 2007, we issued a Report and Recommendation ("R&R") in which we recommended that all of Plaintiff's claims against all Defendants, except for his First Amendment retaliation claim against Defendant Hogan, with

---

*v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id*.  However, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

   [3]We have previously assigned each exhibit submitted by Plaintiff with an Exhibit number, in the same order Plaintiff attached the exhibits to his complaint, for ease of identification.

   [4]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

   [5]The Plaintiff completed an application to proceed *in forma pauperis* and authorization to have funds deducted from his prison account.  The Court then issued an administrative order directing the warden to commence the withdrawal of the full filing fee due the court from the Plaintiff's prison trust fund account.

respect to the April 3, 2007 Misconduct Report Hogan issued against Plaintiff, be dismissed.[6] Further, we recommended that Plaintiff's case be remanded to the undersigned only with respect to the stated First Amendment retaliation claim against Defendant Hogan. (Doc. 7). Plaintiff submitted Objections to our R&R. (Doc. 8). On October 12, 2007, the District Court issued a Memorandum and Order in which it dismissed Plaintiff's Objections and adopted our R&R in its entirety. (Doc. 11). The District Court dismissed all of Plaintiff's claims against all Defendants, except for his First Amendment retaliation claim against Defendant Hogan, with respect to the April 3, 2007 Misconduct Report. This case was then remanded to the undersigned.

On October 17, 2007, we issued an Order denying Plaintiff's request for appointment of counsel. We also issued an Order granting Plaintiff's *in forma pauperis* request and directing the Clerk of Court to serve Plaintiff's Complaint on the remaining Defendant, CO Hogan. (Docs. 12 and 13). Defendant Hogan was then served, and in response to the Complaint, on December 14, 2007, he filed a Motion to Dismiss under Rule 12(b)(6) for failure to state a claim **(Doc. 19)**, as well as a support Brief with Exhibits. (Doc. 20). On January 17, 2008, after being granted an extension of time, Plaintiff filed his three-page Brief in opposition to Defendant's Motion, along with two

---

[6]Notwithstanding Plaintiff Rainey's *pro se* status, we did not recommend that he be permitted leave to amend his Complaint regarding his constitutional claims against all other Defendants except for Defendant Hogan, since we found that, based on well-settled case law, he failed to state such claims against them. Thus, we found futility of any amendment of his claims against the other Defendants, except his First Amendment retaliation claim. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 236 (3d Cir. 2004).

We have been assigned this case for pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

attached Exhibits. (Doc. 25).  Defendant filed his Reply Brief in support of his Motion on January 29, 2008.  (Doc. 26).  On February 11, 2008, Plaintiff improperly filed, without leave of Court as required by Local Rule 7.7, M.D. Pa., a Sur-reply Brief.  (Doc. 27).

## II. Allegations of Complaint.

Plaintiff originally named seven (7) employees of SCI-Dallas as Defendants.  The Defendants included CO Frantz, CO Weaver, CO Sediski, CO Hogan, Librarian Haradem, Hearing Examiner Mr. Donald Jones, and Unit Manager Ms. Chris Putman.  As stated, only Plaintiff's First Amendment retaliation claim as against Defendant Hogan remains in this case.  Thus, we shall not discuss herein Plaintiff's claims against the other six original Defendants which have been dismissed.

Plaintiff averred that, on April 3, 2007, Defendant Hogan filed a false Misconduct Report against him in retaliation for a previous grievance Plaintiff filed against Hogan and former Defendants Frantz and Sediski. (Doc. 1, p. 3(a)).  Plaintiff specifically alleged that:

> C/O Hogan falsified a report stating that [Plaintiff] came back to the block at 10:50am, <u>which is true</u>, but [Plaintiff's] pass stated 10:30am. <u>That my (sic) [may] be true as well</u>.  However, C/O Hogan must have told the staff member at the desk, to put 10:30am on 'Rainey' pass, because the Librarian Ms. Haradem can verify that [Plaintiff] was there until 10:45am not 10:30am.

(*Id.*). (Emphasis added).

As a result of Defendant Hogan's April 3, 2007 Misconduct Report, essentially charging Plaintiff with not timely returning from the law library as ordered, Plaintiff was sanctioned seven (7) days cell restriction by former Defendant Putnam. (Doc. 1, Ex. 1 and Doc. 20-2, p. 16).[7]

---

[7]Plaintiff did not attach a copy of Defendant Hogan's April 3, 2007 Misconduct Report as an exhibit to his Complaint.  Nor did Plaintiff indicate if he appealed the April 3, 2007 Misconduct Report.  Defendant has attached a copy of his April 3, 2007 Misconduct Report as

4

As relief, Plaintiff sought compensatory damages from each Defendant as well as injunctive relief.  (Doc. 1, p. 4).

As stated, the District Court found that Plaintiff stated only a First Amendment retaliation claim against Defendant Hogan regarding this Defendant's April 3, 2007 Misconduct Report which was allegedly issued due to Plaintiff's grievance against staff members.[8]  (Doc. 11).

**III. Section 1983 Standard.**

In an action brought pursuant to 42 U.S.C. § 1983, the Plaintiff must prove the following two essential elements in order to state a claim:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).[9]

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Drummer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *Parratt, supra*.  It is also well settled in the Third Circuit

---

an exhibit to his current Brief, Doc. 20-2, p. 16.   Plaintiff also attached a copy of the April 3, 2007 Misconduct Report to his opposition Brief, Doc. 25, Ex. 2.

[8]As noted above, it was not clear from his pleading if Plaintiff exhausted his DOC administrative remedies with respect to the April 3, 2007 misconduct report, since he only indicated  that he filed a misconduct hearing appeal regarding the April 11, 2007 misconduct report. (Doc. 1, Ex. 6).

[9]The sole Defendant, CO Hogan, as an employee of SCI-Dallas, is clearly a state actor.

that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id*. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

## IV. Discussion.

Plaintiff originally claimed that prison staff members Frantz, Hogan and Sediski denied him access to the courts on March 14 or March 15, 2007, by ordering him to leave the law library after his authorized hour-long session had expired.[10] (Doc. 1, p. 3(a)). Plaintiff alleged that on April 5, 2007 and April 13, 2007, former Defendant Frantz again interfered with his access to the court by ordering Plaintiff to come back from the law library in one hour at 9:30 a.m. and not to stay longer, and by telling him that he [Defendant Frantz] would not honor the "law-lib" pass or accept a phone call from the librarian indicating that she would keep Plaintiff and let him continue his legal research beyond t he one-hour authorized session. (Doc. 1, p. 3(a)). Plaintiff's dismissed First Amendment

---

[10]Plaintiff alleged that since the morning law library hour session sign-up form stated "PLEASE NOTE: THIS SLIP IS FOR AN HOUR LONG SESSION ONLY. 8:30 am GROUP MUST LEAVE AT 9:30 am UNLESS LIBRARIAN DETERMINES THERE IS AVAILABLE SEATING" (Doc. 1, Ex. 3), his ability to stay beyond one hour "is the librarian (sic) call, not the block officers (sic)." (Doc. 1, p. 3(a)). (*See also* Doc. 25, p. 1).

denial of access to courts claim against prison staff members Frantz, Hogan and Sediski was basically that these CO's would not let him stay in the law library beyond the one hour allotted by his pass.  Plaintiff's remaining claim is that Defendant CO Hogan retaliated against him by issuing the April 3, 2007 Misconduct Report because Plaintiff filed a grievance against this Defendant and other staff.

      As discussed below, we agree with Defendant Hogan that, based on Plaintiff's own pleading, as well as the documents he attached to it and referenced in it, Plaintiff has failed to state a First Amendment retaliation claim.  The pleading and referenced documents show that Plaintiff was ordered by the Housing Unit CO's, including Hogan, to follow the April 3, 2007 morning call-out schedule and to leave the library by 9:30 a.m.  Plaintiff admittedly did not leave the library until 10:45a.m. and did not return to the cell block until 10:50a.m.  Plaintiff has admitted that his library session sign up form required him to leave the library at 9:30 a.m., but he states that since the form stated that if the librarian determined there was available seating, an inmate could stay longer than his one-hour allotted time.  Plaintiff claims that the decision as to whether he could stay longer in the library on April 3, 2007, was the librarian's and not the block officers' notwithstanding the orders of the block officers for Plaintiff to adhere to the morning call-out schedule.  The call-out schedule undisputedly had required Plaintiff to leave the library at 9:30a.m. and not 10:45a.m., the time he admittedly left on the day in question.  (Doc. 1, p. 3(a)). Regardless of Plaintiff's claim that it was the librarian's decision if he could stay in the library longer than the one hour provided by the morning call-out schedule, the simple uncontested and admitted fact remains that Defendant Hogan, and other block officers, had ordered Plaintiff to leave the library at 9:30 a.m. and he did

not leave until 10:45 a.m.  Thus, we agree with Defendant (Doc. 20, p. 2), and find that even if Plaintiff has properly alleged that his grievance, *i.e.* the exercise of his constitutional right, was the motivating factor in Hogan's decision to issue the April 3, 2007 Misconduct Report against him, Plaintiff's own pleading and the documents referenced therein show that Hogan would have made the same decision and would have still issued the Misconduct Report against Plaintiff absent Plaintiff's filing of his grievance for a reason reasonably related to a legitimate penological interest, *i.e.* tracking the locations of inmates in the prison and requiring inmates to follow orders of the CO's.

The Court has previously found that Plaintiff was not denied access to the courts since he did not state any actual injury to any pending or forthcoming legal proceedings as a result of the staff members' alleged actions, *i.e.* ordering Plaintiff to leave the library at 9:30a.m.  In fact, the only injury Plaintiff alleged was that he was forced to leave the law library after his hour long research period and only on three occasions.[11]  Plaintiff did not claim that he was prevented future one-hour visits to the law library.  Plaintiff did not aver that the law library was inadequate or, in the alternative, he was denied adequate legal assistance.  Plaintiff did not claim that his efforts to reach this Court were hindered in any way.  Nor did Plaintiff claim that he was denied access for any hour-long period he signed up for.  Plaintiff merely complained that on three occasions he was

---

[11]Plaintiff alleged that he was not allowed to stay past his hour long session by Defendants Frantz, Hogan, and Sediski on "March 14, or 15, 2007."  (Doc. 1, p. 3(a)).  Plaintiff averred that Defendant Frantz would not allow him to stay later on April 5, 2007 and April 13, 2007.  (*Id.*).

not allowed to receive extra time in the law library beyond the one hour allotted by his pass.[12] Further, Plaintiff did not claim that any court case he had pending was adversely affected by staff's failure to allow him to stay in the law library on three days for an extra one-half hour to forty-five minutes. Thus, the Court found that Plaintiff did not state a First Amendment access to the courts claim against Frantz, Hogan, and Sediski. We now find that Plaintiff has failed to state a First Amendment retaliation claim against Defendant Hogan.

Initially, the Court adopted our R&R and found that Plaintiff stated a First Amendment retaliation claim against Defendant Hogan with respect to Hogan's April 3, 2007 Misconduct Report issued against Plaintiff. Plaintiff claimed that the misconduct was filed due to his grievance against several staff members in which he complained about his library time. Defendant now moves to dismiss the last claim in this case as against him and argues that Plaintiff's own documents which he has submitted show that Hogan's Misconduct Report was properly issued and that Plaintiff was properly given a 7-day suspension since his April 3, 2007 stay in the library was beyond the time allotted for in the Housing Unit officers' Orders and since he refused to follow the morning call-out schedule. (Doc. 20, p. 2). In his Complaint, Plaintiff claimed, that it was for the librarian to decide which inmates could stay later in the law library, in excess of the one hour allotted by the pass. In his present opposition Brief, Plaintiff states that the librarian allowed him to stay in the library for the second half of the library morning sessions and that he was in the law library until 10:45 a.m. on April 3, 2007. (Doc. 25, p. 2). Plaintiff admits that he did not return to the cell block until 10:50

---

[12]The morning law library hour session sign-up forms, which Plaintiff has attached to his Complaint, stated in large capital letters "PLEASE NOTE: THIS SLIP IS FOR AN HOUR LONG SESSION ONLY." (Doc. 1, Ex. 3).

a.m. on April 3, 2007. (Doc. 1, p. 3(a)).

Even if Plaintiff is correct that it was the librarian's decision, and not the decision of the block officers, as to which inmate could stay in the library longer than the one-hour pass provided for (Doc. 25, p. 1), as Plaintiff admits, the block officers had ordered him to follow the morning call-out schedule and to leave the library at 9:30 a.m. on April 3, 2007. Plaintiff admittedly failed to follow those orders, and he did not leave the library on April 3, 2007 until 10:45 a.m. (Doc. 25, p. 2), and he did not return to the cell block until 10:50 a.m. (Doc. 1, p. 3(a)). Thus, Plaintiff admits that he did not return to the cell block until one hour and twenty minutes after he was ordered to return. Accordingly, despite Plaintiff's claim that Hogan wrote him up on April 3, 2007 due to his (Plaintiff's) grievance against staff (including Hogan), and that he was not allowed to receive extra time in the law library beyond the one hour allotted by his pass, it is clear, based on Plaintiff's pleading and the documents referenced therein, that Hogan would have still written Plaintiff up regardless of Plaintiff's grievance. As Defendant argues, it was in the interests of the prison to know where inmates where and to have inmates follow the orders of the CO's, and thus, the issuance of his Misconduct Report was reasonably related to a legitimate penalogical interest.

The Court has previously found that the actions of the three stated staff members, Frantz, Hogan, and Sediski, did not violate Plaintiff's First Amendment right of access to the courts. As we stated in our prior R&R, Plaintiff simply had no constitutional right to be permitted extra time in the law library, especially since he did not allege this caused injury to any of his court cases.

On April 3, 2007, Plaintiff averred that Defendant Hogan filed a false misconduct report against him as retaliation for a previous grievance Plaintiff had filed against Defendants Frantz,

Hogan, and Sediski. (Doc. 1, p. 3(a)). Plaintiff averred that on March 14 or March 15, 2007, Defendant Hogan ordered him to return from the "law-lib" at 9:30 a.m. and stated that he [Defendant Hogan] would not honor a "law-lib" pass or phone call from Librarian Haradem to allow him [Plaintiff] to stay later than allotted by the morning call-out schedule.[13] Plaintiff acknowledged that the Housing Unit officers, including Defendant Hogan, had ordered him to follow the morning schedule and to return from the library by about 9:30 a.m. Plaintiff alleged that on April 3, 2007, Defendant Hogan filed a false misconduct report against him charging him with returning to the block at 10:50a.m., "which is true," and which was longer than indicated by his pass which showed he left the library at 10:30a.m. (Doc. 1, p. 3(a)).

A copy of the Disciplinary Hearing Report dated April 4, 2007, is attached to the Complaint. (Doc. 1, Ex. 1). As noted, Plaintiff initially did not submit a copy of Defendant Hogan's April 3, 2007 Misconduct Report with his Complaint, but Defendant Hogan has now submitted in with his Brief, Doc. 20-2, p. 16, and Plaintiff has attached it to his Brief, Doc. 25, Ex. 2. We consider the Misconduct Report since it was referenced in Plaintiff's Complaint and his claims were based upon it.[14]

We construed the Disciplinary Hearing Report as being related to the April 3, 2007 Misconduct Report Defendant Hogan issued against Plaintiff. The Disciplinary Hearing Report

---

[13] Plaintiff claimed that librarian Haradem, at times, would allow him to stay later in the library than his one hour pass. (See also Doc. 25, p. 1).

[14] The Court, in deciding Defendant's Motion, can consider documents referenced in Plaintiff's Complaint and upon which his claims are based, such as the April 3, 2007 Misconduct Report. *See Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)

11

indicated that former Defendant Unit Manager Putman found Plaintiff guilty of the April 3, 2007 Misconduct Report, and imposed as a sanction "7 days cell restriction effective April 4, 2007." (Doc. 1, Ex. 1, and Doc. 1, p. 3(b)).

As stated, Defendant has attached a copy of the April 3, 2007 Misconduct Report he issued against Plaintiff (A 559435) to his Brief, Doc. 20-2, p. 16, and Plaintiff has attached it to his Brief, Doc. 25, Ex. 2.

The April 3, 2007 Misconduct Report indicates that Plaintiff was charged with refusing to obey an order and being in an unauthorized area since Defendant Hogan observed Plaintiff returning from the law library at 10:50 a.m. when he was supposed to have returned to the cell block by 9:30 a.m. pursuant to the call-out for that day. Plaintiff's pass indicated that he left the library at 10:30a.m., and thus Plaintiff was not accounted for "a period of 20 minutes." (*Id*.).[15] The Misconduct Report also stated that Plaintiff was ordered in the past by staff, *i.e.* the Block officers, to report back to the block "in a timely manner." The Report concluded that Plaintiff refused to follow the orders of the Block officers and the rules set forth for inmate accountability. (*Id*.).

Plaintiff admittedly returned "to the block" at 10:50 a.m., but his pass indicated that he left the law library at 10:30 a.m., which "my (sic) [may] be true as well." (Doc. 1, p. 3(a)). Plaintiff alleged that Defendant Hogan's Misconduct Report was false, however, because Plaintiff averred that he left the law library at 10:45am and not 10:30a.m. (*Id*.). Plaintiff alleged that "C/O Hogan

---

[15]We agree with Defendant Hogan that it is of no moment whether Plaintiff left the library on April3 , 2007, at 10:45 a.m., as he claims, or at 10:30 a.m., which was written on his pass, since Plaintiff admits that he did not return to the cell block until 10:50 a.m., which was in violation of the orders of the block officers and well beyond the time authorized by Plaintiff's pass.

must have told the staff member at the desk, to put 10:30am on 'Rainey' pass." (*Id.*).  Regardless of what time Plaintiff left the library, it is admitted by Plaintiff that he did not return to the cell block until 10:50 a.m. and that this was in direct violation of the block officers' orders and the time allotted for his pass.

The Court has previously found that Plaintiff's claim that the April 3, 2007 Misconduct Report of Defendant Hogan was falsified does not state a constitutional claim because the filing of a false misconduct report does not constitute a violation of an inmate's constitutional rights.  In *O'Connell v. Sobina*, 2008 WL 144199, * 16 (W.D. Pa.), the Court stated that:

> A prisoner does not have a constitutional right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest.  *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988).  In other words, the mere filing of false charges against an inmate does not constitute a *per se* constitutional violation.  *Id.*

*See also Wesley v. Dombrowski*, 2004 WL 1465650 *7 (E.D. Pa.).

Therefore, the Court dismissed Plaintiff's claim that Defendant Hogan issued a false Misconduct Report on April 3, 2007, against him pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim.  The Court also found no due process violation with respect to the 7-day suspension Plaintiff received as his disciplinary sentence for having been found guilty of Hogan's Misconduct Report. *See Smith v. Mensinger*, 293 F. 3d 641, 653 (3d Cir. 2002).

As stated, with respect to the only remaining claim in this case, Plaintiff alleged that Defendant Hogan filed the April 3, 2007 Misconduct Report against him as retaliation for his prior grievance against this Defendant and against former Defendants Frantz and Sediski.  (Doc. 1, p.

3(a)). The Court allowed Plaintiff's First Amendment retaliation claim to proceed against Defendant Hogan. *See Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001). Defendant now moves to dismiss this sole claim remaining in this case basically by arguing that Plaintiff admitted, and his documents show, that his April 3, 2007 law library pass required his return to the block at 10:30 a.m., and show that he did not return until 10:50 a.m. Defendant contends that, since Plaintiff admitted that he was ordered by the block officers to follow the morning schedule and to leave the library at 9:30 a.m., that he [Defendant] would have made the same decision and issued the Misconduct Report against Plaintiff despite Plaintiff's grievance against him, since it was related to legitimate penological interests.

As the Court in *Washington v. Klem*, 497 F. 3d 272, 283 (3d Cir. 2007), recently stated:

> Interests of safety and health play a particularly important role in the institutional setting. *Williams v. Morton,* 343 F.3d 212, 218 (3d Cir.2003) (stating that "when a challenged regulation implicates security ... judicial deference is especially appropriate") (internal quotation omitted); *Lovelace,* 472 F.3d at 210-11 (Wilkinson, J., dissenting) (chastising the majority for not properly accounting for the prison's compelling interest in safety and security). The Supreme Court in *Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005), *repeatedly referenced* the importance of according deference to prison authorities' choices about how to run their institution.

The *O'Connell* Court stated:

> [M]erely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *see Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568,

> 50 L.Ed.2d 471 (1977); *Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1997).
>
> If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. *Mt. Healthy*, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that the y would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must review prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir. 1996); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995);, *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L .Ed.2d 747 (1996); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

2008 WL 144199, *11.

While Plaintiff's allegations sufficiently state the first two elements of a First Amendment retaliation claim, we agree with Defendant (Doc. 20, pp. 9-11) that Plaintiff's own allegations and his exhibits fail to establish the third required element. Plaintiff's own allegations and his exhibits show that Defendant Hogan would have made the same decision regarding his April 3, 2007 Misconduct Report, regardless of Plaintiff's grievance about staff since Plaintiff's documents show that he did not return to the cell block until 10:50 a.m., despite being ordered to leave the library at 9:30 a.m. as provided for in the morning call-out. *See Rauser v. Horn*, 241 F. 3d at 334.

As the *O'Connell* Court stated:

> The third element of a retaliation claim requires the plaintiff to show that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse

15

> action. This "motivation" factor may be established by alleging a chronology of events from which retaliation plausibly may be inferred. *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Goff v. Burton*, 91 F.3d 1188 (8th Cir. 1996); *Pride v. Peters*, 72 F.3d 132 (Table), 1995 WL 746190 (7th Cir. 1995). It is Plaintiff's burden to prove that the Defendants were motivated by retaliation. *Hannon v. Speck*, 1988 WL 131367, at * 4 (E.D. Pa. Dec. 6, 1988) ("In bringing a § 1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor . . . was as he alleged.") (internal quotes an d citation omitted), *aff'd*. 888 F.2d 1380 (3d Cir. 1989) (Table).

2008 WL 144199, *12.

As discussed in detail above, Plaintiff's pleading and his documents do not show that the protected activity, *i.e.* Plaintiff's grievance against staff, was a substantial motivating factor in Defendant Hogan's decision to issue the April 3, 2007 Misconduct Report against him. Plaintiff's own pleading and documents show that Defendant Hogan issued the April 3, 2007 Misconduct Report because Plaintiff admittedly failed to follow orders of the bock officers to adhere to the morning call-out schedule and to return to his cell block by around 9:30 a.m. As Defendant states (*Id*.), Plaintiff readily admits most of Defendant's statements made in his April 3, 2007 Misconduct Report to support the charges contained therein. Plaintiff only alleges that Defendant Hogan's Misconduct Report was false because Plaintiff says that he left the law library at 10:45a.m. and not 10:30 a.m. (Doc. 1, p. 3(a)). Regardless of Plaintiff's 15-minute discrepancy with the Misconduct Report (Doc. 25, p. 1), the admitted fact remains that Plaintiff acknowledges that he did not return to the cell block until 10:50 a.m., contrary to the orders of the Block Officers to leave the library at 9:30 a.m. in compliance with the morning call-out schedule. Notwithstanding the time Plaintiff left the library, be it 10:45a.m. and not 10:30a.m., Plaintiff admits, and his documents show, that

he was only on the April 3, 2007 morning call-out for the library from 8:30 a.m. until 9:30 a.m. Thus, as Defendant argues, based on Plaintiff's own pleading and his own documents submitted in support thereof, there is simply no causal connection shown between Plaintiff's grievance against the CO's and the issuance of Defendant's Misconduct Report. To establish a retaliation claim, the Plaintiff must show that there exists a causal nexus between the Plaintiff's constitutionally protected conduct and the adverse action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). As the Third Circuit Court stated in *Smith v. Dept. of General Services of PA*, Appeal No. 05-3405, 3d Cir. 6-7-06, slip op., p. 8 (Non-Precedential), "a claim of First Amendment retaliation requires personal involvement in the alleged retaliatory conduct so that there is a casual connection. *Brennan v. Norton*, 350 F. 3d 399, 414, 419 (3d Cir. 2003)."(second citation omitted).

We find that the required nexus does not exist with respect to Defendant Hogan's issuance of the April 3, 2007 Misconduct Report and Plaintiff's grievance against him.

Therefore, it will be recommended that Defendant Hogan's Motion to Dismiss (Doc. 19) be granted, and that Plaintiff's remaining First Amendment retaliation claim against Defendant Hogan be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

**V. Recommendation.**

Based on the foregoing, we respectfully recommend that Defendant Hogan's Motion to Dismiss **(Doc. 19)** be granted, and that Plaintiff's remaining First Amendment retaliation claim against Defendant Hogan, with respect to the April 3, 2007 Misconduct Report, be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

                                          **s/Thomas M. Blewitt**
                                          **THOMAS M. BLEWITT**
                                          **United States Magistrate Judge**

**Dated: March 17, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE RAINEY, | : | CIVIL ACTION NO. **1:CV-07-1294** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CHRIS PUTMAN, et al., | : | |
| | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **March 17, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however,

need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: March 17, 2008**